Argued March 22, affirmed April 19, 1976

SAULS, *Respondent,*

*v.*

STATE ACCIDENT INSURANCE FUND, *Appellant.*

(No. 22063, CA 5637)

548 P2d 509

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Bernard Jolles,* Portland, argued the cause for respondent. With him on the brief were Franklin, Bennett, Ofelt & Jolles, P.C., Portland.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

State Accident Insurance Fund (SAIF) appeals from that portion of the order of the circuit court affirming a determination both by the Workmen's Compensation Board (Board), and the referee that claimant had sustained a compensable injury to his right eye.

Claimant is a millwright at the Crown Zellerbach paper mill at St. Helens. As a part of his job he was required to raise by hand 55-gallon oil drums weighing approximately 450 pounds from a horizontal to an upright position so that the oil could be pumped out to lubricate the machinery. Claimant was obliged to perform this chore every second or third day.

On October 17, 1972, at around 10 or 10:30 a.m. claimant raised a full oil drum. He felt nothing unusual until about 6 p.m. that evening when, while attempting to do some studying, he found he could not read because he began experiencing "flashing lights" and some pain in his right eye. He noted that he could not see the letters on the page. These symptoms continued until about 3 a.m. the next morning. The next day claimant began noticing floating objects (termed "seaweed" by the eye doctors) in his right eye. He went to Dr. U'Ren on October 19, who found "many vitreous floaters [seaweed] in each eye, but more in the right eye. No retinal tears or detached retina was present in either eye at that time."

Claimant continued working, raising oil barrels every second or third day. No claim was filed, although claimant testified that he reported the incident to two superiors.

On November 27, 1972, claimant again raised an oil drum as before. That evening he noticed flashing lights in his left eye. By the next morning a red dot appeared in the vision of his left eye. Claimant noticed no symptoms in his right eye except that he was still experiencing some seaweed in his right eye vision.

On Thursday, November 30, the vision in claimant's left eye became blurry and claimant noticed a curtain before the left eye. Claimant went to Dr. U'Ren on December 2. Dr. U'Ren found a detached retina involving the entire upper half of claimant's left eye, with a large horseshoe-shaped tear present.

Claimant was immediately hospitalized and on December 5 retinal reattachment surgery was done on the left eye by Dr. U'Ren. By December 21 the left eye retina had completely detached again. On December 23 claimant had a retinal reattachment on his left eye. This was done by Dr. Chenoweth. On December 26, while claimant was still in the hospital recuperating from the left eye retinal reattachment operation, claimant was given a Laser treatment to his right eye to prevent retinal detachment in the right eye.

Claimant filed two claims for the injuries to his left eye, both of which were allowed.

On June 25, 1973, claimant filed a claim alleging that he had suffered a compensable injury to his right eye as a result of the October 17, 1972 lifting incident. SAIF denied the compensability of claimant's right eye condition. The referee found the right eye condition to be analogous to the left eye condition and allowed the claim. The Board and the circuit court accepted the analysis of the referee. This appeal followed.

SAIF argues that the decisions of the referee, Board and circuit court are in error because all were based on a major misunderstanding of the medical evidence. SAIF contends that this evidence establishes that the vitreous floaters or seaweed claimant suffered in his right eye are not related to any work activity by the claimant; that claimant was not given any medical treatment for this seaweed; and that therefore the seaweed condition in the right eye does not constitute a compensable injury.

SAIF directs our attention to the following portion of Dr. Chenoweth's report:

"Although Mr. Sauls has bilateral peripheral retinal degeneration, which could predispose to a retinal detachment condition, it is my opinion that the physical exertion exhibited during the lifting of an oil drum on November 27, 1972 was a proximate cause of the acute retinal tear and subsequent detachment in the left eye. For this reason, I believe the detachment surgery and hospitalization necessary for the treatment of the [left eye] detachment is a condition which is related to his employment.

"On the other hand, the prophylactic treatment to the retinal degeneration of the right eye was necessary for treatment of a condition not related to his employment. * * *"

Reference should also be made to the following from Dr. U'Ren's letter to claimant's attorney:

"* * * In response to your first question about the lifting incident on October 17, 1972, I would say that lifting a 450 pound oil drum could cause a vitreous detachment and floaters in his right eye, but that the lattice degeneration and the peripheral holes that he had, were unrelated to the lifting incident."

As a result of our de novo review of the record we are satisfied that claimant suffered a compensable injury to his right eye on October 17, 1972.

Claimant testified that following the lifting incident of October 17, he experienced flashing lights, pain and impaired vision in his right eye. This was followed by the appearance of vitreous floaters in the same eye. The report of Dr. U'Ren stated that the lifting could have caused the above described symptoms. We believe that this establishes the required medical causation. *Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969). *See also, Hobbs v. Pacific Color Plate Co.,* 8 Or App 168, 493 P2d 755 (1972).

We cannot accept SAIF's argument that the referee, Board and circuit court all misread the evidence.

As we read the two reports, the doctors are saying this: First, the lifting previously described could have caused the vitreous floaters in the right eye. Second, claimant had a pre-existing lattice degeneration and peripheral holes in his right eye, both of which were unrelated to the lifting incident. The Laser treatment to the eye was to treat these conditions and to head off a possible detached retina of that eye.

Affirmed.